# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

H. ANTHONY JAMES, et al.,

      Plaintiffs,

      vs.

OCWEN LOAN SERVICING, LLC,

      Defendant.

Case No. 1:17-cv-0501

Dlott, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

This civil action involves Defendant Ocwen Loan Servicing, LLC's ("Defendant") efforts to collect upon and modify the terms of the defaulted 2011 home loan of Plaintiffs H. Anthony James and Olive P. James (collectively, "Plaintiffs"). Currently pending are the parties' cross-motions for summary judgment. (Docs. 29, 30). For the following reasons, the undersigned recommends that Defendant's motion (Doc. 29) be GRANTED IN PART and DENIED IN PART, and that Plaintiffs' motion (Doc. 30) be GRANTED IN PART and DENIED IN PART.

## I.    BACKGROUND

Plaintiffs filed this lawsuit against Defendant in which they sought relief under three separate federal statutes in relation to Defendant's efforts to collect on a 2011 Note that is secured by a mortgage on Plaintiffs' property located at 8019 Glendale Milford Road in Camp Dennison, Ohio. (Doc. 1). Specifically, in the First Count, Plaintiffs claim that Defendant violated multiple sections of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.* and Regulation X, 12 C.F.R. §

1024.1, *et seq.* (*Id.*, PageID 8-9). In the Second Count, Plaintiffs claim that Defendant violated the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §§ 1692c(a)(2), 1692c(c), and 1692f by continuing to communicate with Plaintiffs directly in connection with the collection of a debt despite knowing Plaintiffs were represented by an attorney with respect to that debt. (*Id.,* PageID 8-9). In the Third Count, Plaintiffs seek a declaratory judgment under 28 U.S.C. § 2201 and Ohio Rev. Code § 2721.03 regarding the person entitled to enforce the Note, the owner of Plaintiffs' obligation, the amount due and owing under the Note and Mortgage, and whether Plaintiffs are in default under that Note and Mortgage. (*Id.,* PageID 9-10).

## II. FINDINGS OF FACT

Both parties have submitted what they contend are undisputed findings of fact in this case. To the extent a genuine dispute exists, the dispute will be construed in favor of the nonmoving party.

On February 3, 2006, Plaintiffs signed a Note and Mortgage in the amount of $154,800.00 for their home residence located at 8019 Glendale Milford Road in Camp Dennison, Ohio ("Loan"). (Doc. 29-2, PageID 269-87; Doc. 30-1, PageID 392-410). In or about June 2011, IndyMac Mortgage Services, the then-servicer of the Loan, initiated foreclosure proceedings against Plaintiffs. (Doc. 27-1, PageID 118). Those foreclosure proceedings eventually were dismissed. (*Id.*, PageID 120). On November 1, 2013, IndyMac transferred the servicing of the Loan to Defendant. (Doc. 29-2, PageID 261; Doc. 30-2, PageID 425). The Loan was in default at the time Defendant obtained servicing rights. (Doc. 30-2, PageID 425).

After obtaining servicing rights for the Loan, Defendant began calling Plaintiffs repeatedly, sometimes multiple times in a single day. (Doc. 30-3, PageID 444-55; *see also* Doc. 27-1, PageID 125). On or about January 13, 2015, Plaintiffs' attorney sent Defendant a letter requesting that "[a]ll correspondence and negotiations of the debt with your firm should flow through [the attorney's] office[.]" (Doc. 30-5, PageID 469). The letter contained a signed authorization for release of Plaintiffs' account information to their attorney. (*Id.*).

On or about January 14, 2015, Plaintiffs' attorney sent Plaintiffs' loan modification application to an attorney who passed along the application to Defendant on January 16 and January 17, 2015. (Doc. 29-3, PageID 288-366; Doc. 30-6, PageID 470-93).[1] Defendant's account log indicates that Defendant received the application on January 19, 2015. (Doc. 30-7, PageID 527-28).[2]

On January 20, 2015, Defendant sent Plaintiffs a letter to the Camp Dennison address that acknowledged receipt of their application. (Doc. 29-4, PageID 367-68; Doc. 30-8, PageID 542-43). Plaintiffs received that acknowledgement letter from Defendant. (Doc. 27-1, PageID 131).

A second letter from Defendant addressed to Plaintiffs at their Camp Dennison address is dated January 23, 2015. (Doc. 29-4, PageID 369-74; Doc. 30-9, PageID 544-49). That letter contains the salutation "Dear Customer(s)," indicates that their "document due date was 6/18/2014[,]" and requests that Plaintiffs submit the required

---

[1] The fax and email of January 16, 2015, which was a Friday, contain a timestamp of 4:43:48 PM and 4:52 PM, respectively. (Doc. 30-6, PageID 471). The email of January 17, 2015, which was a Saturday, contains a timestamp of 8:51:14 AM. (*Id.*, PageID 473).
[2] Defendant's Senior Loan Analyst also asserts in his Affidavit, which is based on his knowledge of Defendant's business records and documents relating to the Loan, that Defendant received Plaintiffs' application on January 19, 2015. (Doc. 29-1, PageID 259).

documents listed in the letter "as soon as possible" to allow Defendant to evaluate Plaintiffs for all available loss mitigation options.  (Doc. 29-4, PageID 369; Doc. 30-9, PageID 544).  It further states:  "Since your document due date has now passed, you may no longer be eligible for certain protections under applicable laws and/or certain loss mitigation options."  (Doc. 29-4, PageID 369; Doc. 30-9, PageID 544).  The letter advises the customers to submit a complete application as soon as possible, noting that Defendant may still evaluate complete applications submitted after the document due date.  (Doc. 29-4, PageID 369; Doc. 30-9, PageID 544).  Defendant's corporate representative testified that Defendant creates the letter and then sends it to a third party for mailing.  (Doc. 28-1, PageID 213-14).  That corporate representative further testified that the letter customarily would have been sent by regular mail unless it was one that had to be sent by certified mail.  (*Id.*, PageID 213).  She indicated it was possible that the third party could have failed to send the letter as required.  (*Id.*, PageID 214).  Defendant's account log includes a notation that the letter had been sent, but does not display a tracking number for the letter.  (Doc. 30-7, PageID 530).[3]  Plaintiff H. Anthony James testified that he did not receive that second letter from Defendant. (Doc. 27-1, PageID 133).[4]

On February 4, 2015, Plaintiff H. Anthony James resent the January 13, 2015 request to Defendant that all communications about the debt on their account be directed to Plaintiffs' attorney.  (Doc. 30-10, PageID 550-51).  Defendant's account log

---

[3] Neither party has presented evidence as to whether the January 23, 2015 letter was one that customarily would have been sent by certified mail.

[4] Defendant incorrectly states that Plaintiff H. Anthony James testified only that he did not *remember* if he received the January 23, 2015 letter.  (Doc. 32, PageID 568; Doc. 35, PageID 612-13).  In his testimony, however, Plaintiff H. Anthony James indicated that he did not remember receiving the letter but then plainly states: "I didn't receive this letter. . . . We didn't get this letter."  (Doc. 27-1, PageID 133).

notes receipt of the authorization on February 9, 2015. (Doc. 30-7, PageID 531). Defendant continued to place phone calls to Plaintiffs after receipt of that authorization. (Doc. 30-3, PageID 450-55).

On February 14, 2015, Plaintiff H. Anthony James called Defendant to inquire about his loan modification application status. (Doc. 30-7, PageID 532). Defendant provided the requested status update and informed Plaintiff about the missing documents he needed to complete his loan modification application. (*Id.*). Plaintiff made a follow-up appointment to speak with Defendant about his loan modification application on February 17, 2015. (*Id.*). Defendant's representative thereafter called and spoke to Plaintiff H. Anthony James on February 17, 2015 per the scheduled appointment. (Doc. 30-7, PageID 533). During that phone call, Plaintiff H. Anthony James was irate, became argumentative, and refused to send some of the documents requested by Defendant for the loan modification application. (*Id.*). On March 5, 2015, Defendant's account log notes an email was sent regarding the missing documents. (Doc. 30-7, PageID 534). Plaintiffs never submitted the additional information and documents that Defendant had requested to complete the loan modification application. (Doc. 29-1, PageID 259).

On March 13, 2015, Defendant's representative called Plaintiffs and Plaintiffs told the representative that Defendant needed to call Plaintiffs' attorney. (Doc. 30-7, PageID 534). Defendant's representative informed Plaintiffs that Defendant could not do so because Defendant used an auto dialer to make the phone calls. (*Id.*). Defendant thereafter continued to make phone calls to Plaintiffs through August 19, 2015. (Doc. 30-3, PageID 451-55).

## III. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court must view the evidence and draw all reasonable inference in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden of production, the nonmoving party cannot rest on the pleadings, but must present significant probative evidence in support of their case to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 248-49. The mere scintilla of evidence to support the nonmoving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. *Id.* at 252.

The fact that the parties have filed cross-motions for summary judgment in this case does not alter the applicable standard of review.

> The Court reviews each party's motion separately, determining, for each side, whether a judgment may be entered in accordance with the standards of Rule 56. Both motions must be denied if the Court finds there is a genuine issue of material fact. If however, there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the Court will render judgment.

*Klaus v. Hilb, Rogal & Hamilton Co. of Ohio*, 437 F. Supp. 2d 706, 732 (S.D. Ohio 2006).

## IV.  ANALYSIS

Defendant has moved for summary judgment on all three Counts of Plaintiffs' Complaint.  Plaintiffs, on the other hand, have moved for summary judgment on portions of their First and Second Count.  The parties' respective arguments on each Count are addressed below.

### A. RESPA (First Count)

"'RESPA is a consumer protection statute that regulates the real estate settlement process.'" *Washington v. Green Tree Servicing LLC*, No. 1:15-cv-354, 2017 WL 1857258, at *3–4 (S.D. Ohio May 5, 2017) (quoting *Hardy v. Regions Mortg., Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006)), *report and recommendation adopted*, 2017 WL 2599252 (S.D. Ohio June 15, 2017).  Through the enactment of RESPA, Congress intended "to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country."  12 U.S.C. § 2601(a). "'Although the "settlement process" targeted by the statute was originally limited to the negotiation and execution of mortgage contracts, the scope of the statute's provisions was expanded in 1990 to encompass loan servicing.'" *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 719 (6th Cir. 2013) (quoting *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665-66 (9th Cir. 2012)).  "As a remedial statute, RESPA is construed broadly to effectuate its purposes." *Id.*

"The Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act ('Regulation X') is a Consumer Financial Protection Bureau regulation promulgated

pursuant to section 1022(b) of the Dodd-Frank Act, 12 U.S.C. § 5512(b), and [RESPA], 12 U.S.C. § 2601, *et seq.*" *Cooper v. Fay Servicing, LLC*, 115 F. Supp. 3d 900, 903 n.6 (S.D. Ohio 2015). Regulation X imposes certain obligations on a loan servicer with respect to loss mitigation generally and the processing of a borrower's loan modification application. *Washington*, 2017 WL 1857258, at *3–4. As relevant here, Regulation X requires a servicer to exercise "reasonable diligence in obtaining documents and information to complete a loss mitigation application." 12 C.F.R. § 1024.41(b)(1). To comply with this diligence requirement, a servicer must promptly review a loss mitigation application for completeness and "[n]otify the borrower in writing within 5 days . . . after receiving the loss mitigation application that the servicer . . . has determined that the loss mitigation application is either complete or incomplete." 12 C.F.R. § 1024.41(b)(2)(i)(A)-(B). The servicer also "must include a reasonable date [in the written notice sent by the servicer] by which the borrower should submit the documents and information necessary to make the loss mitigation application complete." 12 C.F.R. § 1024.41(b)(2)(ii).

"A borrower may enforce provisions of [§ 1024.41 of Regulation X] pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))." 12 C.F.R. § 1024.41(a). "Whoever fails to comply with any provision of [RESPA] shall be liable to the borrower for each such failure[.]" 12 U.S.C. § 2605(f). Upon a showing of liability, an individual may recover actual damages, and any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of RESPA and Regulation X, in an amount not to exceed $2,000. 12 U.S.C. § 2605(f)(1). An individual also may

be awarded the costs of the action and reasonable attorneys' fees. 12 U.S.C. § 2605(f)(3).

Defendant moves for summary judgment on each violation of RESPA and Regulation X alleged by Plaintiffs in their Complaint. (Doc. 29, PageID 246-52). Rather than disputing Defendant's arguments or moving for summary judgment on each violation alleged in their Complaint, Plaintiffs narrow their claims by focusing on three arguments under 12 C.F.R. §§ 1024.41(b)(1), (b)(2)(i)(B) and (b)(2)(ii) of Regulation X in their opposition brief and cross-motion for summary judgment. (Doc. 30, PageID 386-89; Doc. 31, PageID 557-59; Doc. 36, PageID 624-25).[5] Both parties contend that no genuine issue of material fact exists with respect to those three alleged violations.

Having considered the evidence favorably for each party, the undersigned recommends granting in part Defendant's motion for summary judgment and denying Plaintiffs' motion for summary judgment based on the RESPA claims.

### 1. There are genuine issues of material fact as to whether Defendant sent the written notice required by 12 C.F.R. § 1024.41(b)(2)(i)(B).

Plaintiffs argue that Defendant violated Regulation X by failing to send a written notice stating whether Plaintiffs' loss mitigation application either was complete or incomplete as required by 12 C.F.R. § 1024.41(b)(2)(i)(B), and move for summary judgment on that basis. (Doc. 30, PageID 387-88; Doc. 31, PageID 558; Doc. 36,

---

[5] The undersigned considers the other alleged violations of Regulation X under 12 C.F.R. §§ 1024.38(a) and (b)(2), and 1024.41(c)(1)(i)-(ii), (c)(2)(iv), (d), (e), and (h) to be abandoned due to Plaintiffs' failure to address them. *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013); *Hicks v. Concorde Career College*, 449 F. App'x 484, 487 (6th Cir. 2011); *Clark v. City of Dublin*, 178 F. App'x 522, 524-25 (6th Cir. 2006). The undersigned further notes that the alleged violations of 12 C.F.R. § 1024.38 nonetheless would not be actionable because no private right of action exists to enforce them. *Smith v. Nationstar Mortg.* No. 15-13019, 2015 WL 7180473, at *3-4 (E.D. Mich. Nov. 16, 2015) (finding that no private cause of action exists to enforce violations of Section 1024.38 of RESPA); *see also Agomuoh v. PNC Fin. Servs. Grp.*, No. GJH-16-1939, 2017 WL 657428, at *10 (D. Md. Feb. 16, 2017) (holding no private cause of action exists to enforce violations of 12 C.F.R. § 1024.38 and 12 C.F.R. § 1024.40).

PageID 624-25).[6]  Defendant, on the other hand, argues that summary judgment is appropriate because there is undisputed evidence of mailing, which includes a copy of the January 23, 2015 letter from its business records that is addressed to Plaintiffs at the same address they received a prior letter, an affidavit from its representative that the letter had been sent, and testimony from its corporate representative as to the mailing process.  (Doc. 29, PageID 248-49; Doc. 32, PageID 567-70; Doc. 35, PageID 612-13). Defendant contends that Plaintiffs rely on nothing more than the unsupported, self-serving testimony of Plaintiff H. Anthony James, which is insufficient to create a genuine issue of material fact.  (Doc. 32, PageID 567-70; Doc. 35, PageID 612-13).

The copy of the January 23, 2015 letter provides the starting place for the analysis.  It is undisputed that Defendant has a copy of a letter dated January 23, 2015 in its business records that is addressed to Plaintiffs at the same Camp Dennison address where they admit they received the January 20, 2015 letter mailed by Defendant.  Defendant's account log contains a notation that the January 23 letter was sent.  This evidence supports Defendant's argument that it mailed the letter.

Yet, other evidence presented is probative of non-mailing.  The January 23 letter uses a generic salutation of "Dear Customer(s)" rather than the personalized salutation of "Dear H. Anthony James, Olive P. James" used in the January 20 letter that Plaintiffs received. (Doc. 29-4, PageID 367, 369).  The January 23 letter also identifies Plaintiffs' original document due date as June 18, 2014, which was six months before Plaintiffs

---

[6] The briefings indicate that the parties dispute whether the letter actually had been sent but do not dispute whether the content of the January 23, 2015 letter—if it actually was sent—indicated the loss mitigation application was complete or incomplete.  But to the extent there is a dispute as to the content of the letter, the undersigned finds that the plain language of the letter is determinative of the issue. The letter indicates in bold typeface: "At this time, [Defendant] is **not able to complete the evaluation of your request** because you have not submitted all the required documents."  (Doc. 30-9, PageID 544-45) (emphasis added).  This language conclusively indicates that Plaintiffs' loss mitigation application was incomplete.

even submitted their loan modification application.  (*Id.*).  Defendant has offered no explanation for the puzzling inclusion of this due date.  Viewed together, this evidence could indicate that the letter contained in Defendant's business records was never finalized for mailing.

Adding to those irregularities in the January 23 letter is the testimony from Defendant's corporate representative. That corporate representative testified that a third party mails the letters on Defendant's behalf, such that she was unable to say definitively that the January 23 letter had been mailed.  (Doc. 28-1, PageID 213-14). She also conceded that the third party potentially could have failed to mail the letter. (*Id.*, PageID 214).  Although she did testify that the letter customarily would be sent by regular mail if it was not one that had to be sent by certified mail, she did not know whether the January 23 letter was one that had to be sent by certified mail.  (*Id.*, PageID 213).  No tracking number or certified mail receipt has been provided for the January 23 letter that would definitively prove the fact of mailing.

As for the testimony of Plaintiff H. Anthony James, it is further probative of, but cannot conclusively establish, non-mailing of the letter.  Although Defendant claims the testimony is merely unsupported, self-serving testimony that cannot be considered on summary judgment, the undersigned disagrees.  The testimony has not been provided in a vacuum.  Defendant has claimed that Plaintiffs' receipt of the January 20 letter demonstrates that the January 23 letter had been sent properly to Plaintiffs' current address.  (Doc. 29, PageID 248-49; Doc. 32, PageID 567-70; Doc. 35, PageID 612-13). Following Defendant's logic, Plaintiffs would have received the January 23 letter *if it had been sent*.  Plaintiff H. Anthony's testimony of non-receipt (Doc. 27-1, PageID 133)

therefore directly counters Defendant's argument as to mailing. That testimony also is supported by the other above-referenced evidence that is probative of non-mailing.

The averment of Defendant's Senior Loan Analyst that the January 23 letter was sent is not based on personal knowledge of mailing by the third party. Instead, that averment is based on information gleaned from the business records of Defendant that are discussed above. (Doc. 29-1, PageID 259). The credibility of that averment therefore depends upon whether the evidence contained within Defendant's business records is found to be the most convincing on the issue of mailing. As that determination is within the province of the jury, the Senior Loan Analyst's averment cannot be conclusive evidence of mailing.

Finally, Defendant's reliance on the "mailbox rule" (Doc. 32, PageID 568; Doc. 35, PageID 612) is misplaced. The mailbox rule presumes the fact of mailing. *Reynolds v. Reliance Standard Life Ins. Co.*, No. C-3-06-010, 2006 WL 2990385, at *7 (S.D. Ohio Oct. 18, 2006) ("The 'mailbox rule' provides that **once a notice is mailed**, it is presumed to be received in due course.") (emphasis added). Here, there are genuine issues of material fact as to whether Defendant actually mailed the January 23 letter in the first instance, which make the rule inapplicable to this analysis.

Accordingly, the undersigned recommends denying summary judgment to both parties on Plaintiffs' claim under 12. C.F.R. § 1024.41(b)(2)(i)(B) for failure to notify Plaintiffs in writing as to whether the loss mitigation application was either complete or incomplete.

**2. There are genuine issues of material fact as to whether Defendant identified a reasonable date as required by 12 C.F.R. § 1024.41(b)(2)(ii).**

Arguing in the alternative, Plaintiffs contend that even if Defendant mailed the January 23, 2015 letter, then the content of the letter violated Regulation X because it failed to identify a reasonable date by which Plaintiffs should submit the documents and information necessary to make the loss mitigation application complete as required by 12 C.F.R. § 1024.41(b)(2)(i)(B) and (b)(2)(ii). (Doc. 30, PageID 388-89; Doc. 31, PageID 558-59; Doc. 36, PageID 625). Plaintiffs point to the following language in the letter to support their argument: "**Your document due date was 6/18/2014.**" (Doc. 30-9, PageID 544). They point out that the due date identified is more than six months prior to their submission of a loan modification application to Defendant. (Doc. 30, PageID 388; Doc. 31, PageID 558; Doc. 36, PageID 625). Defendant does not directly address this argument in any of its briefings. (*See generally* Doc. 9, PageID 247-52; Doc. 32, PageID 567-72; Doc. 35, PageID 611-14).[7]

The undersigned assumes for the purpose of this analysis only that Defendant mailed the January 23 letter as required.[8] That letter states, in pertinent part:

**DOCUMENT DUE DATE**

**Your document due date was 6/18/2014\*. That date has now passed.\*\***

**You should submit all the document(s) listed in this letter as soon as possible.**

---

[7] Although not an issue raised by Defendant, the undersigned notes that Plaintiffs did not specifically identify 12 C.F.R. § 1024.41(b)(2)(ii) as a violation in the Complaint. (Doc. 1, PageID 7). However, the reasonable date requirement set forth in that provision is incorporated into § 1024.41(b)(i)(B) to which Plaintiffs specifically refer in their Complaint and the issue also arguably could fall under Plaintiffs' general pleading that Defendant "acted with undue delay and inattention obtaining documents and information to complete the James's loss mitigation application, in violation of 12 C.F.R. § 1024.41(b)(1)" (the reasonable diligence requirement). (*Id.*).

[8] Defendant, however, cannot be found to violate Regulation X both by *failing to mail* the required notice as Plaintiffs allege and also by *mailing* that same required notice with a purportedly unreasonable date.

(Doc. 30-9, PageID 544). Viewing the statement in context and in the light most favorable to Defendant as the nonmoving party, the June 18, 2014 date, although puzzling, is not the date by which the letter actually requests Plaintiffs to submit the additional documents to make the application complete.[9] Instead, the letter indicated that Plaintiffs should submit the documents listed in the letter "as soon as possible" to make the loss mitigation application complete.

Plaintiffs offer no caselaw or argument to show that requiring documents to be submitted "as soon as possible" fails to comply with § 1024.41(b)(2). A court addressing this similar issue has held the reasonableness of such timing to be a fact-intensive inquiry that is not appropriately decided on summary judgment. *See Dionne v. Fed. Nat'l Mortg. Ass'n*, No. 15-cv-56, 2016 WL 6892465, at *6 (D.N.H. Nov. 21, 2016) (denying summary judgment to plaintiff under 12 C.F.R. § 1024.41(b)(2) because whether the defendant's request for documents "immediately" constituted a reasonable date was a fact-intensive inquiry).

Having considered the evidence in the light most favorable to Defendant as the nonmoving party, the undersigned finds there are genuine issues of material fact as to whether Defendant's letter complied with the "reasonable date" requirement. Accordingly, the undersigned recommends denying summary judgment to Plaintiffs on their claim under 12 C.F.R. § 1024.41(b)(2)(ii).

---

[9] To the extent Plaintiffs intend to argue that Defendant's alleged misrepresentation in the letter demonstrates they had no meaningful opportunity to present additional documents beyond the June 18, 2014 date, that argument is not well taken for the reasons discussed in subsection IV(A)(3) below.

### 3. The January 23, 2015 letter did not misrepresent that Plaintiffs "had lost their rights under federal law and certain loss mitigation options."

Plaintiffs claim that Defendants violated RESPA and Regulation X by misrepresenting that Plaintiffs "had lost their rights under federal law and certain loss mitigation options in the purported January 23, 2015 letter." (Doc. 30, PageID 389; Doc. 31, PageID 557-59; Doc. 36, PageID 624-25).[10] This argument appears to be based on Regulation X's reasonable diligence requirement in 12 C.F.R. § 1024.41(b)(1), and possibly is asserted to demonstrate that Plaintiffs did not have a meaningful opportunity to submit additional documents to Defendant before losing legal rights and loan modification options. Defendant, on the other hand, contends that Plaintiffs mischaracterize the statements made in the letter, which do not misrepresent the loss of rights or loan modification options. (Doc. 32, PageID 571-72; Doc. 35, PageID 612-14). Defendant also presents evidence of phone calls that it claims shows Plaintiffs had a meaningful opportunity to present additional documents but failed to do so. (Doc. 32, PageID 570; Doc. 35, PageID 614).

Viewing the evidence in favor of each party, no reasonable jury could conclude that Defendant made a misrepresentation as to Plaintiffs' loss of rights and loan modification options in the January 23, 2015 letter. The letter does not state that Plaintiffs had actually *lost* their rights, but instead states that they "***may no longer be eligible*** for certain protections under applicable laws and/or certain loss mitigation options." (Doc. 30-9, PageID 544) (emphasis added). That language does not

---

[10] Similar to Plaintiffs' argument under 12 C.F.R. § 1024.41(b)(2), this argument presumes that Defendant mailed the January 23, 2015 letter.

foreclose the possibility that Plaintiffs still were eligible for those protections and loss mitigation options.

Further, Defendant has presented undisputed evidence of at least two phone calls between Defendant and Plaintiffs about the additional documents requested in which Plaintiffs indicated to Defendant that they would not be providing those documents. (Doc. 30-7, PageID 532-533).

Accordingly, the undersigned recommends granting summary judgment to Defendant and denying summary judgment to Plaintiffs on Plaintiffs' argument relating to an alleged misrepresentation by Defendant in the January 23, 2015 letter in what is construed to be an alleged violation of 12 C.F.R. § 1024.41(b)(1).

### 4. Plaintiffs are not entitled to statutory damages under 12 U.S.C. § 2605(f)(1)(B).

Plaintiffs claim the three violations referenced above demonstrate a pattern or practice of violating RESPA and Regulation X that entitles them to statutory damages. (Doc. 30, PageID 389). Defendant, on the other hand, claims that Plaintiff has not proven any violations of RESPA such that summary judgment on all of the RESPA claims is appropriate. (Doc. 29, PageID 246-52). Defendant also points out that the arguments on which Plaintiffs base their pattern and practice argument are alternatives that cannot factually coexist. (Doc. 32, PageID 571-72; Doc. 35, PageID 613-14).

Under 12 U.S.C. § 2605(f)(1)(B), an individual may recover statutory damages in an amount not to exceed $2,000.00 in the case of a pattern or practice of noncompliance with the requirements of RESPA and Regulation X. One or two related violations alone are insufficient to establish a pattern or practice of noncompliance. *Moore v. Caliber Home Loans*, No. 1:14-cv-852, 2015 WL 5162482, at *8 (S.D. Ohio

Sept. 3, 2015) (citing *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 523 (10th Cir. 2013) and *In re Maxwell*, 281 B.R. 101, 123024 (Bankr. D. Mass 2002)) (holding that a failure to respond to a single qualified written request does not show a pattern or practice of noncompliance under RESPA); *see also Mejia v. Ocwen Loan Servicing, LLC*, No. 16-16353, 2017 WL 3396563, at *4 (11th Cir. Aug. 8, 2017) ("Failure to respond to one, or even two qualified written requests does not amount to a 'pattern or practice.'"); *Bulmer v. MidFirst Bank, FSA*, 59 F. Supp. 3d 271, 279 (D. Mass. 2014) (finding "one failure is not enough to demonstrate a pattern or practice of noncompliance for purposes of statutory damages" under RESPA); *Garcia v. Wachovia Mortg. Corp.*, 676 F. Supp. 2d 895, 909 (C.D. Cal. 2009) (stating that "a single failure to respond to a Qualified Written Request does not state a claim for a 'pattern or practice'" under RESPA).

Here, Plaintiffs have abandoned all but three of their claims under RESPA and Regulation X. Those three claims, however, are based on the same January 23 letter and present alternate theories of liability based on whether the January 23 letter was or was not mailed to Plaintiffs. If the letter was not mailed, then Plaintiffs are asserting only one violation of RESPA and Regulation X. If the letter was mailed, then Plaintiffs are asserting, at most, two violations of RESPA and Regulation X that concern the content of the same January 23 letter. One of those alleged violations, however, has been dismissed above, leaving Plaintiffs with only one potential violation based upon the content of the January 23 letter. Certainly one violation of RESPA and Regulation X cannot constitute a pattern of practice of noncompliance. But even if Plaintiffs still could assert two violations of RESPA, those alleged violations are based on the content of the

same January 23 letter, which is insufficient to establish a pattern or practice of noncompliance.

Accordingly, the undersigned recommends granting summary judgment to Defendant and denying summary judgment to Plaintiffs on the issue of statutory damages pursuant to 12 U.S.C. § 2605(f)(1)(B).

**B. FDCPA (Second Count)**

The FDCPA is an "extraordinarily broad statute" that is intended to address what Congress considered to be a "widespread problem" of abusive, deceptive, and unfair debt collection practices by many debt collectors. *Frey v. Gangwish*, 970 F.2d 1516, 1518, 1521 (6th Cir. 1992) (citing 15 U.S.C. § 1692(e)). To succeed on a claim under the FDCPA, Plaintiffs must prove: 1) Plaintiffs are consumers; 2) the debt at issue is a consumer debt; 3) Defendant is a debt collector; and 4) Defendant has violated one of the prohibitions in the FDCPA. 15 U.S.C. § 1692a-f; *see also Estep v. Manley Deas Kochalski, LLC*, 942 F. Supp. 2d 758, 766 (S.D. Ohio 2013) (citing *Wallace v. Washington Mutual Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012) and *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 926 (N.D. Ohio 2009)). If Plaintiffs prove each of the above elements, then they are entitled to actual damages, statutory damages in an amount not to exceed $1,000.00, costs, and reasonable attorneys' fees. 15 U.S.C. § 1692k. Here, only the fourth element is in dispute.

**1. Defendant violated 15 U.S.C. § 1692c(a)(2).**

The parties have cross moved for summary judgment on Plaintiffs' FDCPA claim based on Defendant's alleged violation of 15. U.S.C. § 1692c(a)(2). That section states:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a

18

debt collector may not communicate with a consumer in connection with the collection of any debt—

(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer[.]

15 U.S.C. § 1692c(a)(2).

Defendant argues that summary judgment on Plaintiffs' § 1692c(a)(2) claim is appropriate because the January 20 and 23, 2015 letters to Plaintiffs neither sought to collect a debt nor sought to induce payment of the debt by Plaintiffs. (Doc. 29, PageID 252-54).

Plaintiffs respond that summary judgment for Defendant is improper because their § 1692c(a)(2) claim is not based on the January 20 and 23, 2015 letters from Defendant and is instead based on approximately 363 phone calls made to Plaintiffs by Defendant between January 13, 2015 and August 19, 2015 after Defendant had been notified that Plaintiffs were represented by an attorney with respect to the debt. (Doc. 31, PageID 555-56). Plaintiffs claim that because these calls were in clear violation of § 1692c(a)(2), summary judgment in favor of Plaintiffs is warranted. (Doc. 30, PageID 384-86; Doc. 31, PageID 554-56).

Responding to Plaintiffs' arguments, Defendant claims that summary judgment in its favor still is appropriate on the § 1692c(a)(2) claim because Plaintiffs failed to present authenticated evidence of any phone calls Defendant made to Plaintiffs or significant probative evidence that showed any phone call conveyed information about a debt or had the animating purpose of inducing payment of a debt. (Doc. 32, PageID 562-66; Doc. 35, PageID 609-11).

Plaintiffs counter that the approximately 363 phone calls made by Defendant to Plaintiffs indeed conveyed information about their debt and were for the animating purpose of inducing payment of that debt. (Doc. 36, PageID 620). Plaintiffs argue that Defendant's reliance on 2 of the approximately 363 phone calls made to Plaintiffs fails to demonstrate that all of the phone calls were for the purpose of loss mitigation. (Doc. 36, PageID 620). Plaintiffs also submit testimony from Defendant's corporate representative that they claim authenticates the phone calls made by Defendant to Plaintiffs, and argue that they have satisfied their burden under Fed. R. Civ. P. 56(c)(2). (Doc. 36, PageID 621-24).

For the reasons that follow, the undersigned concludes that summary judgment should be granted to Plaintiffs on their § 1692c(a)(2) claim.

As an initial matter, Defendant's argument as to the January 20 and 23, 2015 letters is immaterial to Plaintiffs' FDCPA claim, which is based on hundreds of phone calls made to Plaintiffs rather than on those two letters referenced by Defendant.

Next, the undersigned disagrees with Defendant's argument that the account and call logs relied upon by Plaintiffs cannot be considered on summary judgment. Under Fed. R. Civ. P. 56(c)(1), a party may rely on unauthenticated materials in moving for or opposing summary judgment. *Swank v. Hale*, No. 2:12-cv-1031, 2016 WL 1156517, at *3 (S.D. Ohio Mar. 24, 2016) (citing Fed. R. Civ. P. 56(c)(1)); *Smith v. Interim HealthCare of Cincinnati, Inc.*, No. 1:10-cv-582, 2011 WL 6012971, at *4 (S.D. Ohio Dec. 2, 2011) (citing Fed. R. Civ. P. 56(c)). Although the other party may object that the evidence being relied upon cannot be presented in an admissible form, the party seeking to use that evidence then has the opportunity either to authenticate the

evidence or propose a method for doing so at trial that would allow for its admission. *Swank*, 2016 WL 1156517, at *3 (citing Fed. R. Civ. 56(c) and Advisory Committee Notes to 2010 Amendments). Here, Plaintiffs have met their burden by offering the testimony of Defendant's corporate representative consistent with Fed. R. Evid. 803(6) that the logs are regularly kept business records and that the information therein is recorded by Defendant at or near the time of the event. (Doc. 28-1, PageID 171-72, 222-24; *see also* Doc. 36-2, PageID 629-35).[11] Plaintiffs also have provided a reasonable method for obtaining admission of that evidence at trial. (Doc. 36, PageID 622). No more is required of Plaintiffs on summary judgment.

Finally, even when the evidence is construed in the light most favorable to Defendant, a reasonable jury could conclude only that Defendant communicated with Plaintiffs "in connection with the collection of any debt" after Plaintiffs had advised Defendant in writing that they were represented by counsel. The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). "To convey information regarding a debt, a communication must at a minimum imply the existence of a debt." *Brown v. Van Ru Credit Corp.*, 804 F.3d 740, 742 (6th Cir. 2015). "What information a message conveys depends partly on context[.]" *Id.* at 743. "A message that would seem cryptic to a third party may have a clearer import when directed to the debtor, and a message that is part of a series of communications may mean more because of what

---

[11] Defendant raised the issue of authentication for the first time in their reply brief when responding to evidence presented by Plaintiffs in their opposition to Defendant's motion for summary judgment. (Doc. 35, PageID 609-10). Although Plaintiffs did not seek to file a sur-reply to address that newly raised issue, they did address the issue in their contemporaneous briefing of their cross-motion for summary, which had been incorporated by reference into Plaintiffs' briefings on Defendant's motion for summary judgment. (Doc. 31, PageID 553; Doc. 36, PageID 619, 621-22).

has already been said." *Id.* For a communication to be "in connection with the collection of debt," the "animating purpose of the communication must be to induce payment by the debtor." *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011) (citing *Gburek v. Litton Loan Serv. LP*, 614 F.3d 380, 385 (7th Cir. 2010)). However, a communication need not itself be a collection attempt or expressly demand payment to be deemed in connection with the collection of a debt. *Id.* Any communication with the debtor that "aims to make [a collection] attempt more likely to succeed is one that has the requisite connection." *Id.*

After reviewing the full context of the relevant phone calls here, the undersigned finds that the phone calls imply the existence of a debt and that at least some of the phone calls were for the animating purpose of inducing payment of a debt. With respect to implying the existence of a debt, the nature of the relationship between Plaintiffs and Defendant prior to the relevant 2015 phone calls is pivotal. The phone calls at issue here were preceded by numerous communications by Defendant to Plaintiffs about their delinquent account over more than a one-year period. More specifically, the parties had a relationship dating back to November 2013 when Defendant acquired servicing rights on Plaintiffs' defaulted Loan, which had been the subject of foreclosure proceedings initiated by the prior servicer. (Doc. 30-3, PageID 444-55; Doc. 36-1, PageID 627). Defendant's representatives began calling Plaintiffs immediately upon acquiring servicing rights and had multiple phone conversations with Plaintiffs about their debt prior to 2015 during which Defendant's representatives, among other things, informed Plaintiffs of their outstanding balances, asked Plaintiffs if they had questions about their outstanding balances, and discussed the status and outcome of the foreclosure

proceeding on Plaintiffs' defaulted Loan. (*See, e.g.*, Doc. 40-7, PageID 496-97, 502-03, 510, 515, 517-18, 522-23, 526). Plaintiff H. Anthony James testified that he answered many of the phone calls from Defendant and was aware the phone calls concerned the delinquent balance on their account. (Doc. 36-1, PageID 628). Consistently, notations on Defendant's account log show Plaintiffs answered many of the phone calls placed by Defendant and also declined to make any payments to Defendant. (Doc. 30-3, PageID 444-53). So when Defendant continued to make phone calls to Plaintiffs from approximately February 2015 through August 2015, those phone calls unquestionably implied the existence of a debt to Plaintiffs.[12]

Although some—but not all—of the phone calls in 2015 were unanswered or disconnected, that does not preclude a finding that the phone calls implied the existence of a debt. Unanswered or disconnected phone calls may convey information regarding a debt depending upon the context. *Brown v. Van Ru Credit Corp.*, 804 F.3d 740, 742 (6th Cir. 2015) (finding that the context in which phone calls are made can determine what information is conveyed regarding a debt); *Litt v. Portfolio Recovery Assocs. LLC*, 146 F. Supp. 3d 857, 870 (E.D. Mich. 2015) (concluding that 160 unanswered telephone calls made by debt collector to the plaintiff conveyed information about a debt where the plaintiff had received numerous prior calls from the debt collector and was familiar with its caller identification information); *Rush v. Portfolio Recovery Assocs. LLC*, 977 F. Supp. 2d 414, 423-24 (D.N.J. 2013) (finding that unanswered phone calls to consumers after consumers retained counsel and sent cease and desist letter were communications within the FDCPA where the caller was a debt collector, the debtor was

---

[12] The undersigned excludes the two phone calls about Plaintiffs' loan modification application in February 2015 from this analysis because those phone calls were precipitated by Plaintiffs' application and related inquiries.

familiar with debt collector's name and phone number, and the debt collector had called numerous times prior attempting to collect the debt); *Cerrato v. Solomon & Solomon*, 909 F. Supp. 2d 139 (D. Conn. 2012) (holding that unanswered telephone calls from a debt collector to a debtor after the debtor's cease and desist letter constituted communications under the FDCPA where debtor had received 117 prior calls from the debt collector and was familiar with its caller identification information). Here, Plaintiffs were aware Defendant was calling them and also were aware of the purpose of the phone calls based on the many prior phone calls and other communications they had received from Defendant since November 2013. In fact, it can reasonably be inferred that Plaintiffs eventually retained counsel and sought to redirect communications to their attorney in 2015 because they understood that Defendant's numerous phone calls concerned a debt. Further, when Defendant called Plaintiffs in 2015, Plaintiffs occasionally spoke to Defendant or received voicemail messages from it such that not all of the calls went unanswered or were void of any verbal content from Defendant. In any event, it is not necessary for Plaintiffs to answer every phone call or have long conversations with Defendant for one or more of those phone calls to imply the existence of a debt to them, particularly considering the nature of their prior relationship.

As for those phone calls being made "in connection with the collection of a debt," the undersigned's review takes into account the following factors relied upon by the Sixth Circuit:

> (1) the nature of the relationship of the parties; (2) whether the communication expressly demanded payment or stated a balance due; (3) whether it was sent in response to an inquiry or request by the debtor; (4) whether the statements were part of a strategy to make payment more likely; (5) whether the communication was from a debt collector; (6)

whether it stated that it was an attempt to collect a debt; and (7) whether it threatened consequences should the debtor fail to pay.

*Goodson v. Bank of Am., N.A.*, 600 F. App'x 422, 431 (6th Cir. 2015) (citing *Grden*, 643 F.3d at 173; *McDermott v. Randall S. Miller & Assocs., P.C.*, 835 F. Supp. 2d 362, 370-71 (E.D. Mich. 2011)).

The factors that weigh against finding that the relevant phone calls were made in connection with the collection of a debt are those related to the content of the communications. In particular, Plaintiffs have not pointed to any evidence showing Defendant made an express demand for payment, expressly stated the phone calls were an attempt to collect a debt, or threatened negative consequences for failure to pay the debt during any phone call during the relevant timeframe. Nonetheless, such express statements are not required to find the phone calls were made in connection with the collection of a debt. *Grden*, 643 F.3d at 173.

The factors weighing in favor of finding that the relevant phone calls were communications made in the connection of the debt are the nature of the parties' relationship, the absence of a debtor inquiry prompting the large volume of phone calls, and the consistency and volume of the phone calls reflecting a strategy by Defendant to make payment of the debt more likely. As described above, the parties had a relationship dating back to November 2013 that had, at all times, centered around Plaintiffs' delinquent account. (Doc. 30-3, PageID 444-55; Doc. 36-1, PageID 627). Prior to 2015, Defendant had multiple phone conversations with Plaintiffs about their debt during which Defendant, among other things, informed Plaintiffs of their outstanding balances, asked Plaintiffs if they had questions about their outstanding balances, and discussed the status and outcome of the foreclosure proceeding on

Plaintiffs' Loan. (*See, e.g.*, Doc. 40-7, PageID 496-97, 502-03, 510, 515, 517-18, 522-23, 526). Defendant received notice of Plaintiffs' representation by counsel in relation to their debt by at least February 9, 2015. (Doc. 30-7, PageID 531). Nevertheless, Defendant continued after that date to make unsolicited phone calls to Plaintiffs, often multiple times per day, through August 2015. (Doc. 30-3, PageID 444-55; Doc. 30-7, PageID 531-41).[13] From February 24, 2015 through August 2015, Defendant also sent Plaintiffs a "Monthly Delinquent Account Notice," reflecting Defendant's ongoing attempts to notify Plaintiffs of their debt. (Doc. 30-7, PageID 533, 536-541).

As just one example, Defendant called Plaintiffs on March 13, 2015 after having received notice of Plaintiffs' representation by counsel. (Doc. 30-7, PageID 534). Plaintiffs answered the phone call, declined to verify their account for Defendant, and told Defendant to call their attorney who they had retained to handle communications about their debt with Defendant. (*Id.*). Defendant responded that it could not call the attorney because it uses an auto dialer. (*Id.*). Just three days prior to this phone call, Defendant's account log notes that Plaintiffs' account had been reported to the credit bureau as past due since July 1, 2011. (*Id.*). Then, three days after the phone call,

---

[13] Defendant's account log shows that several phone calls in February 2015 were or may have been related to the loan modification application submitted by Plaintiffs (Doc. 30-7, PageID 532-33), which the undersigned assumes for the purposes of this analysis were not "in connection with the collection of a debt" because they generally appear to have been initiated by Plaintiffs' inquiry about loan modification. *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011) (finding that letters to debtor that "were merely a ministerial response to a debtor inquiry, rather than part of a strategy to make payment more likely[,]" did not have the animating purpose of inducing payment by the debtor). Nonetheless, there is no evidence that indicates the phone calls about loan modification continued beyond the February 17, 2015 conversation in which Plaintiffs declined to submit certain documents requested by Defendant to process the loan modification application. (Doc. 30-7, PageID 532-33). Even assuming that several additional phone calls could have been made by Defendant to Plaintiffs concerning loan modification after February 17, 2015, the account and call logs still show that Defendant made hundreds of phone calls to Plaintiffs from late February 2015 through August 19, 2015 for which Defendant has offered no probative explanation of a purpose other than collection of a debt. (Doc. 30-3, PageID 450-55; Doc. 30-7, PageID 533-41).

Defendant's account log has a notation that Plaintiffs' account was past due. (*Id.*). By March 20, 2015, a Monthly Delinquent Account Notice had been mailed. (*Id.*). In each of the following months, there are similar notations in the account log, even though the specific details of the phone calls made to Plaintiffs vary. (*Id.*, PageID 535-41). Defendant has not offered any probative evidence to show that these phone calls were for a purpose unrelated to the collection of Plaintiffs' debt.

Based on this full context of Defendant's phone calls, the only reasonable inference is that some or all of the approximately 300 phone calls made by Defendant to Plaintiffs between mid- to late-February 2015 and August 19, 2015 conveyed information about Plaintiffs' debt and were intended to be part of a dialogue aimed at facilitating the satisfaction of Plaintiffs' debt with Defendant. *Geary v. Green Tree Servicing,* LLC, No. 2:14-cv-00522, 2015 WL 1286347, at *12-13 (S.D. Ohio Mar. 20, 2015) (citing *McLaughlin v. Phelan Hallinan & Schmieg,* LLP, 756 F.3d 240 (3rd Cir. 2014), *cert. denied*, 135 S. Ct. 487 (2014). Given that even one phone call made to Plaintiffs in connection with the collection of a debt after Defendant knew Plaintiffs were represented by counsel is a violation of § 1692c(a)(2), Plaintiffs have satisfied their burden on summary judgment. *Mann v. Acclaim Financial Servs.*, 348 F. Supp. 2d 923, 926 (S.D. Ohio 2004).[14]

For the above reasons, the undersigned recommends denying summary judgment to Defendant and granting summary judgment to Plaintiffs on their claim under 15 U.S.C. § 1692c(a)(2). The undersigned further recommends finding that Plaintiffs are entitled to statutory damages in an amount to be determined after all of Plaintiffs'

---

[14] Defendant has not asserted any exception applies that would excuse it from liability for making such phone calls despite knowledge as to Plaintiffs' representation by counsel.

FDCPA claims have been resolved, that the issue of actual damages be reserved for trial, and that Plaintiffs separately move for an award of other costs and fees to which they may be entitled under § 1692k of the FDCPA.[15]

## 2. Plaintiffs have abandoned their claim pursuant to 15 U.S.C. § 1692c(c).

Defendant seeks summary judgment on Plaintiffs' claim for violation of 15 U.S.C. § 1692c(c). (Doc. 29, PageID 254). Plaintiffs have not sought summary judgment on that claim in their cross motion nor have they specifically addressed Defendant's arguments on that issue. (*See* Doc. 30, PageID 384-86; Doc. 31, PageID 554-56; Doc. 36, PageID 620-24) (making no mention of § 1692c(c) of the FDCPA). Defendant contends that Plaintiffs now have limited their FDCPA claim to violations of § 1692c(a)(2) only. (Doc. 32, PageID 563; Doc. 35, PageID 609).

Upon review, the undersigned finds that Plaintiffs' claim under § 1692c(c) of the FDCPA has been abandoned. "This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013); *see also Hicks v. Concorde Career College*, 449 F. App'x 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in response to a motion for

---

[15] Although Plaintiffs request an automatic award of $1,000.00 in statutory damages, the FDCPA allows statutory damages to be awarded in an amount **not to exceed** $1,000.00 per proceeding (not per violation) based upon a consideration of multiple factors, including "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(a)-(b); *see also Wright v. Finance Serv.*, 22 F.3d 647, 650 (6th Cir. 1994). Given that all of the FDCPA issues raised by Plaintiffs have not been fully resolved and that these factors have not been fully addressed in the parties' briefings or in light of the Court's decision, a separate application for statutory damages is appropriate. *See, e.g., Mann v. Acclaim Financial Servs., Inc.*, 348 F. Supp. 2d 923, 926 (S.D. Ohio 2004).

summary judgment); *Clark v. City of Dublin*, 178 F. App'x 522, 524-25 (6th Cir. 2006) (recognizing that a plaintiff abandons his claims by failing to respond properly to arguments made in defendant's motion for summary judgment). As Plaintiffs have not addressed this claim in any of their summary judgment briefings, the undersigned recommends granting summary judgment to Defendant on Plaintiffs' claim under 15 U.S.C. § 1692c(c).

### 3. Summary judgment is not appropriate for Plaintiffs' newly asserted claim under 15 U.S.C. § 1692d(5).

In their Complaint, Plaintiffs do not assert a claim under or otherwise mention 15 U.S.C. § 1692d. (*See* Doc. 1, PageID 8-9). In their motion for summary judgment, Plaintiffs also include only one subheading relating to Defendant's purported unlawful activity under the FDCPA, which reads: "***Ocwen engaged in unlawful activity under 15 U.S.C. §§ 1692c(a)(2)***." (Doc. 30, PageID 384) (emphasis in original). In the discussion under that subheading, however, Plaintiffs state for the first time that: "The persistent barrage of calls [by Defendant] also violated ***15 U.S.C. § 1692d(5)***, as the calls were willful" and "Ocwen's harassment, phone calls numbering in the hundreds, while knowing that the Jameses were represented by counsel and not to be contacted directly violated 15 U.S.C. § 1692c(a)(2) and ***1692d(5)***." (Doc. 30, PageID 385-86) (emphasis added). Plaintiffs reiterated those statements in their opposition to Defendant's motion for summary judgment and their reply in support of their motion for summary judgment. (Doc. 31, PageID 556; Doc. 36, PageID 620). Defendant did not address the references to § 1692d(5) in any of its summary judgment briefings. (*See* Doc. 29, PageID 252-54; Doc. 32, PageID 562-67; Doc. 35, PageID 609-11). At best, it is possible that Defendant's argument that Plaintiffs failed to prove the phone calls were

"in connection with the collection of a debt" could be applicable here. (Doc. 32, PageID 562-66; Doc. 35, PageID 609-11). However, Defendant contends that Plaintiffs now have limited their FDCPA claim to violations of § 1692c(a)(2) only. (Doc. 32, PageID 563; Doc. 35, PageID 609).

For the following three reasons, the undersigned finds that summary judgment to Plaintiffs under § 1692d(5) of the FDCPA is not appropriate.

First, Plaintiffs did not plead a violation of § 1692d(5) in their Complaint so as to satisfy the notice pleading standards of Fed. R. Civ. P. 8(a)(2). (*See* Doc. 1).

Second, the claim is not clearly presented as one upon which Plaintiffs are moving for summary judgment. The subheading used by Plaintiffs in the motion for summary judgment indicates to the undersigned that § 1691c(a)(2) is the sole ground upon which Plaintiffs sought summary judgment under the FDCPA. Plaintiffs do not discuss in any detail the elements required to prove a violation of § 1692d(5) or how the evidence they specifically identify in their argument relating to § 1692c(a)(2) also satisfies the requirements of § 1692d(5). Instead, they make only a couple buried references to § 1692d(5) in the sections of their motion and reply brief that are focused primarily on § 1692c(a)(2). (Doc. 30, PageID 385-86; Doc. 36, PageID 620). These references to § 1692d(5) provide Defendant with inadequate notice of Plaintiffs' intent to assert this new ground for relief and move for summary judgment on the same. Defendant's lack of response to that reference further suggests that Defendant was, at a minimum, unclear about Plaintiffs' intent with respect to § 1692d(5).

Third, even if Plaintiffs properly pled the claim and properly moved for summary judgment on the claim, Plaintiffs have failed to demonstrate that no genuine issues of

material fact exist. Under § 1692d(5), a debt collector is prohibited generally from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of debt," which specifically includes the conduct of "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5). The "in connection with the collection of a debt" issue has been resolved above and that analysis is incorporated here. As for the issue of a debt collector's intent to annoy, abuse, or harass under § 1692d(5), it is ordinarily one for resolution by the jury. *Harvey v. Great Seneca Financial Corp.*, 453 F.3d 324, 330 (6th Cir. 2006); *Hicks v. America's Recovery Solutions, LLC*, 816 F. Supp. 2d 509, 515 (N.D. Ohio 2011).

Plaintiffs apparently contend that Defendant violated § 1692d(5) for the same reasons it violated § 1692c(a)(2)—that is, by making more than 300 calls to Plaintiffs, sometimes multiple times per day, after Plaintiffs requested that Defendant direct communications about the debt to their counsel. (Doc. 30, PageID 385-86). Yet, Plaintiffs fail to specifically address how those phone calls by Defendant conclusively demonstrate Defendant's intent to annoy, abuse, or harass. Indeed, in their briefings, Plaintiffs do not address the elements of § 1692d(5) and do not refer to any caselaw relating to § 1692d(5) that they contend would support a ruling in their favor. Nonetheless, the undersigned will consider whether the evidence of the multiple phone calls and the requests to contact their counsel would be sufficient to show that Defendant had the requisite intent for a violation of § 1692d(5).

In determining whether an inference of intent is appropriate under § 1692d(5), courts consider the frequency, persistence, and volume of the telephone calls as well as the nature, extent, and context of the phone calls. *Walls v. Portfolio Recovery Assocs., LLC*, No. 2-12-cv-598, 2013 WL 12101052, at *4-6 (S.D. Ohio Nov. 20, 2013); *Hicks*, 816 F. Supp. 2d at 515. "Causing a phone to repeatedly ring is not itself a violation of § 1692d(5)." *Walls*, 2013 WL 12101052, at *4-6. There also is "'no bright line rule regarding the number of calls which creates the inference of intent.'" *Walls*, 2013 WL 12101052, at *4-6 (quoting *Durthaler v. Accounts Receivable Mgmt.*, 854 F. Supp. 2d 485, 489 (S.D. Ohio 2012)). Even multiple daily calls alone do not raise an issue of fact as to harassment. *Walls,* 2013 WL 12101052 (citing *Bancroft v. Afni Inc.*, No. 1:12-cv-1499, 2013 WL 3791465, at *4 (N.D. Ohio July 19, 2013) and *Hicks*, 816 F. Supp. 2d at 515).

Additional or more specific evidence of oppressive or harassing conduct must exist to make a § 1692d(5) claim actionable. *Durthaler,* 854 F. Supp. 2d at 490-91 (granting summary judgment to defendant where a debt collector called a plaintiff thirty times in seventy-three days because there were no circumstances indicating the nature and context of the calls were harassing). Types of additional evidence that may create the necessary inference of intent include, but are not limited to, the disparity between the number of phone calls placed and the number of actual conversations between the debtor and debt collector, *Saltzman v. I.C. Sys..,* No. 09-10096, 2009 WL 3190359, at *7 (E.D. Mich. Sept. 30, 2009) (finding that a ratio of one successful call for every five calls made suggests a difficulty of reaching the plaintiff rather than an intent to harass); *Pugliese v. Prof'l Recovery Serv.*, No. 09-12262, 2010 WL 2632562, at *10 (E.D. Mich.

June 29, 2010) (finding that 350 calls, which were placed several times a day, over an eight-month period even after Plaintiffs repeatedly asked Defendants to cease contact did not violate the FDPCA when only ten of those calls resulted in actual conversations); *Millsap v. CCB Credit Servs.,* No. 07-11915, 2008 WL 8511691, at *6-7 (E.D. Mich. Sept. 30, 2008) (finding no evidence from which a reasonable jury could infer the defendant acted with the requisite intent to annoy, abuse, or harass when a defendant made numerous phone calls during an eleven-month period but only eight of those calls resulted in actual conversations), the timing and pattern of the repeated telephone calls to the debtor, *Millsap,* 2008 WL 8511691, at *7 (finding pattern of calls relevant to determination of intent); *Pugliese*, 2010 WL 2632562, at *9 (citing the pattern of calls as relevant to the inquiry of intent); *Chavious v. CBE Group, Inc.,* No. 10-cv-1293, 2012 WL 113509, at *2 (E.D.N.Y. Jan. 13, 2012) (stating, "[i]n the Court's view, the volume and pattern of calls in this case—thirty-six calls over approximately two months, all made at reasonable times and not one immediately following another—is consistent with cases in which other courts have awarded defendants summary judgment on Section 1692d(5) claims."), and whether the debt collector used threatening or intimidating language, *Millsap*, 2008 WL 8511691, at *7 (stating that a debt collector "does not necessarily engage in harassment by placing one or two unanswered calls a day in an unsuccessful effort to reach the debtor, if this effort is unaccompanied by any oppressive conduct such as threatening messages"); *Pugliese*, 2010 WL 2632562, at *9 (stating that whether the phone calls from the debt collector to the debtor were accompanied by oppressive conduct is relevant to the inquiry of intent).

Beyond the more than 300 phone calls Plaintiffs received from Defendant between January and August 2015, Plaintiffs have failed to specifically identify circumstances surrounding these calls that would conclusively reveal an intent to annoy, abuse, or harass.  Although they indicate that Defendant sometimes made multiple calls per day, Plaintiffs do not specify how many calls were answered, unanswered, and/or disconnected.  If Defendant placed several unanswered calls in a single day in an unsuccessful attempt to reach Plaintiffs, that alone may be insufficient to establish the requisite intent.  *Millsap*, 2008 WL 8511691, at *7.  Plaintiffs also have not pointed out any specific instances where, for example, Defendant immediately called Plaintiffs back after they hung up or after they indicated they were unwilling to speak to Defendant's representative.  Nor have they identified anything else about the specific timing or pattern of phone calls that would plainly demonstrate an intent to annoy, abuse, or harass.  As for the content of the phone calls or messages, Plaintiffs have not identified any instances where Defendant used threatening or abusive language towards Plaintiffs during the phone calls.  Merely attaching Defendant's account and call logs to their motion without explanation as to the specific conduct at issue is insufficient to demonstrate the requisite intent.  It is Plaintiffs' burden to designate those portions of the record with enough specificity that the Court can readily identify those facts upon which they rely.  *Karnes v. Runyon*, 912 F. Supp. 280, 283 (S.D. Ohio 1995).  The trial court does not have a duty to sift through the record to establish for Plaintiffs that there is no material issue of fact.  *Karnes*, 912 F. Supp. at 283; *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).

That is not to say that Plaintiffs have presented no evidence to support their purported claim for relief. In fact, Plaintiffs have pointed out that the phone calls had been ongoing since November 2013 and that Plaintiffs hired an attorney to assist them in getting relief from the constant phone calls Defendant was making to them. (Doc. 30, PageID 386) (citing Doc. 27-1, PageID 136); (Doc. 30-7, PageID 494-540); (Doc. 30-3, PageID 444-55). They also presented evidence that they made one or more requests to Defendant to contact Plaintiffs' attorney instead of them about the debt, after which Defendant continued to call Plaintiffs for approximately six months. (Docs. 30-5, PageID 469; Doc. 30-10, PageID 550-51). Certainly, whether and how often Plaintiffs asked Defendant to stop calling is relevant to whether Defendant intended to annoy, abuse, or harass, but it is not the only relevant consideration under § 1692d. The decision as to what weight to give to this evidence in light of the various considerations is a matter for the jury.

Therefore, in light of the genuine issues of material fact as to the intent element under § 1692d(5) and Plaintiffs' lack of argument specifically addressing this issue, the undersigned recommends denying summary judgment to Plaintiffs under 15 U.S.C. § 1692d(5).

### 4. Plaintiffs abandoned their claim under § 1692f of the FDCPA.

In their Complaint, Plaintiffs assert a claim for relief based upon § 1692f of the FDCPA. (Doc. 1, PageID 9, ¶ 71). Defendant seeks summary judgment on that claim, arguing that Plaintiffs have neither alleged nor provided any evidence of an unfair or unconscionable action taken by Defendant since January 2015. (Doc. 29, PageID 254). Plaintiffs do not address this claim in any way in their opposition to Defendant's motion for summary judgment or their cross-motion for summary judgment. (*See* Doc. 30,

PageID 383-86; Doc. 31, PageID 554-57). Defendant contends that Plaintiffs now have limited their FDCPA claim to violations of § 1692c(a)(2) only. (Doc. 32, PageID 563; Doc. 35, PageID 609).

Upon review, the undersigned finds, in accordance with the caselaw previously discussed, that Plaintiffs' claim has been abandoned due to their failure to address it in their summary judgment briefings. Accordingly, the undersigned recommends granting summary judgment to Defendant on Plaintiff's claim under 15 U.S.C. § 1692f.[16]

### C. Declaratory Judgment (Third Count)

In the Complaint, Plaintiffs request a declaratory judgment concerning the parties' respective rights and obligations under the Loan. (Doc. 1, PageID 9-10). Defendant requests summary judgment on this issue based upon Plaintiffs' failure to demonstrate that the actual controversy requirement of 28 U.S.C. § 2201(a) has been met. (Doc. 29, PageID 255-26). Plaintiffs do not address this claim in any way in their opposition to Defendant's motion for summary judgment or their cross-motion for summary judgment. (*See* Doc. 30, PageID 377-90; Doc. 31, PageID 552-59). Defendant now contends that Plaintiffs have abandoned their declaratory judgment claim by failing to address it. (Doc. 35, PageID 614-15).

Upon review, the undersigned finds, in accordance with the caselaw previously discussed, that Plaintiffs' request for a declaratory judgment has been abandoned due to their failure to address it in their summary judgment briefings. Accordingly, the

---

[16] The undersigned also notes that 15 U.S.C. § 1692f is intended to cover unfair and unconscionable conduct that is *not* already covered in other sections of the FDCPA. *Edwards v. McCormick*, 136 F. Supp. 2d 795, 806 (S.D. Ohio 2001); *McNamee v. Nationstar Mortg., LLC*, No. 14-1948, 2015 WL 5174776, at *5 (S.D. Ohio Sept. 4, 2015). Plaintiffs point to no conduct that is separate from the conduct used to support their claim under 15 U.S.C. § 1692c(a)(2). Therefore, the claim would be redundant and would contravene the purpose of § 1692f of the FDCPA. *McNamee*, 2015 WL 5174776, at *5.

undersigned recommends granting summary judgment to Defendant on Plaintiffs' request for a declaratory judgment.

## V.    CONCLUSION

Consistent with the foregoing analysis, **IT IS RECOMMENDED** that Defendant's motion for summary judgment (Doc. 29) be **GRANTED IN PART** and **DENIED IN PART** and that Plaintiffs' motion for summary judgment (Doc. 30) be **GRANTED IN PART** and **DENIED IN PART.**

Specifically, it is recommended that:

A. Defendant's motion for summary judgment (Doc. 29) be **granted** as to 1) Plaintiffs' RESPA claim alleging misrepresentation in the January 23, 2015 letter under 12 C.F.R. § 1024.41(b)(1), 2) Plaintiffs' request for statutory damages under RESPA pursuant to 12 U.S.C. § 2605(f)(1)(B), 3) Plaintiffs' abandoned RESPA claims under 12 C.F.R. § 1024.38(a) and (b)(2) and 12 C.F.R. § 1024.41(c)(1)(i)-(ii), (c)(2)(iv),  (d), (e), and (h), 4) Plaintiffs' abandoned FDCPA claims under 15 U.S.C. §§ 1692c(c) and 1692f, and 5) Plaintiffs' abandoned request for a declaratory judgment; and be **denied** on all other grounds.

B.   Plaintiffs' motion for summary judgment (Doc. 30) be **granted** as to their FDCPA claim under 15 U.S.C. § 1692c(a)(2); and be **denied** on all other grounds.

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

H. ANTHONY JAMES, et al.,                     Case No. 1:17-cv-0501

    Plaintiffs,

                                       Dlott, J.

    vs.                                           Bowman, M.J.

OCWEN LOAN SERVICING, LLC,

    Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).